**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DEJUNA N. A.,[1]
    Plaintiff,

        v.                                        Civil No. 3:19cv874 (REP)

ANDREW M. SAUL,
Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act. Dejuna N. A. ("Plaintiff"), forty-seven years old at the time of her benefits application, last worked as a quality assurance analyst. (R. at 59, 350.) Plaintiff suffers from carpal tunnel syndrome and spine disorder, which result in numbness, weakness, and pain in her hands, as well as pain in her back. (R. at 18, 20-21, 43-44.) Plaintiff asserts that these medical impairments and resulting symptoms prevent her being able to perform work-related activities and render her disabled. (R. at 43-48.)

On July 3, 2019, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability insurance benefits and supplemental security income. (R. at 30.) Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erred in evaluating Plaintiff's residual functional capacity by failing to consider all of the relevant evidence in the record, and by failing to conduct a function-by-function analysis. (Pl.'s Brief in Supp. of Pl.'s Mot. For Summ. J. 9-13,

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

ECF No. 16 ("Pl.'s Mem.").) Plaintiff also contends that the ALJ erred in her consideration of the vocational expert's testimony. (Pl.'s Mem. at 13.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[2]

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, that the Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 26, 2014, and May 26, 2015, Plaintiff filed, respectively, an application for disability insurance benefits and supplemental security income seeking benefits based upon cervical disc protrusion and numbness and weakness in her right hand. (R. at 145, 352.) The Social Security Administration denied Plaintiff's claim initially on February 5, 2015, and again upon reconsideration on May 18, 2015. (R. at 191, 199.) Plaintiff requested a hearing before an ALJ, and the hearing was held on March 15, 2017. (R. at 171, 206.) On June 22, 2017, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 171-83.) On July 31, 2017, Plaintiff requested review of the ALJ's decision, which the Social Security Administration Appeals Council granted. (R. at 189-90, 274-75.) On October 15, 2018, the Appeals Council issued an order remanding Plaintiff's case back to the ALJ

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

to evaluate Plaintiff's ability to perform handling, fingering, and feeling, and to address the discrepancy between the medical opinions regarding Plaintiff's manipulative limitations. (R. at 189-90.)

Following remand, the ALJ held a second hearing on May 29, 2019. (R. at 37-75.) On July 3, 2019, the ALJ issued a second written opinion, again denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 15-30.) Plaintiff requested review of the ALJ's decision, and on October 22, 2019, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On May 29, 2019, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 39-75.) On July 3, 2019 the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 15-30.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 18-30); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental

limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 9, 2014. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: carpal tunnel syndrome and spine disorder. (R. at 18.) At step three, the ALJ determined that neither of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 19-28.) Based on this evidence the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can occasionally reach overhead with the upper right extremity. She can frequently push or pull, or operate hand controls with the upper right extremity. She can occasionally handle and finger bilaterally. She can never climb ladders, ropes or scaffolds. She can never crawl.

(R. at 19.) The ALJ explained this determination by extensively summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff had functional limitations that were not as severe as Plaintiff alleged. (R. at 19-28.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform her past relevant work. (R. at 28.) The ALJ concluded that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 28.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 29.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of occupations such as public area attendant, children's attendant, and furniture rental clerk. (R. at 29.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 29.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 30.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred in evaluating Plaintiff's residual functional capacity, and that the ALJ erred in her consideration of the vocational expert's testimony. (Pl.'s Mem. at 9-13.) For the reasons set forth below, the ALJ did not err in denying Plaintiff's application for benefits.

### A. The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.

After step three of the ALJ's analysis, but before deciding whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. §§ 404.1545(a), 416.945(a). Residual functional capacity is the most the claimant can do in a work setting despite the physical and mental limitations caused by all of her medically determinable impairments. §§ 404.1545(a)(1), (2), 416.945(a)(1), (2).

Plaintiff raises two issues with the ALJ's assessment of Plaintiff's residual functional capacity: (1) whether the ALJ provided a function-by-function analysis or narrative discussion of Plaintiff's ability to perform work-related activities; and (2) whether the ALJ adequately considered the relevant evidence. (Pl.'s Mem. at 9-12.) Defendant responds that the ALJ provided

a sufficient narrative discussion of Plaintiff's residual functional capacity determination to permit meaningful judicial review, and that the ALJ adequately accounted for Plaintiff's credibly established limitations. (Def.'s Mot. For Summ. J. and Br. in Supp. 17-30, ECF No. 15 ("Def.'s Mem.").)

> 1. The ALJ Did Not Perform an Explicit Function-by-Function Analysis, But the ALJ's Narrative Discussion Allows the Court to Meaningfully Review the ALJ's Residual Functional Capacity Determination.

Social Security Ruling 96-8p explains how an ALJ should assess a claimant's residual functional capacity. SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ "'must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p, at *5). "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions' when determining the claimant's [residual functional capacity]," including those functions listed in 20 C.F.R. § 416.945. *Ladda v. Berryhill*, 749 F. App'x 166, 172-73 (4th Cir. 2018) (quoting SSR 96-8p, at *5). Such exertional and nonexertional functions include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching, as well as mental functions such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures. §§ 404.1545(b), (c), 416.945(b), (c). The ALJ must include "a narrative discussion describing how the evidence supports each discussion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" when analyzing a claimant's residual functional capacity. SSR 96-8p, at *7. This analysis, taken together, is known as the "function-by-function analysis." *See Ladda*, 749 F. App'x at 172-73.

However, there is no "per se" rule requiring remand where the ALJ fails to conduct a function-by-function analysis. *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (citing *Mascio*, 780 F.3d at 636). Remand is only appropriate if the ALJ "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *See Ladda*, 749 F. App'x at 173; *see also Dowling v. Comm'r Soc. Sec. Admin.*, No. 19-2141, 2021 WL 203371, at *8 (4th Cir. Jan. 21, 2021) (holding relevant or "contested" functions require an explicit function-by-function analysis). For example, an ALJ's failure to provide a narrative discussion and explanation of residual functional capacity findings can frustrate a court's meaningful review. *See Hawkins v. Saul*, 796 F. App'x 159, 162 (4th Cir. 2019) ("Because the ALJ's analysis gives no indication of what functions it found [the claimant] able to perform and why . . . we are unable to review the [residual functional capacity] determination for substantial evidence.").

Here, while the ALJ did not explicitly evaluate Plaintiff's work-related abilities on a function-by-function basis, the ALJ nonetheless assessed Plaintiff's relevant functions and provided a "narrative discussion" of the evidence. (R. at 19-28.) The ALJ's narrative discussion allows the Court to meaningfully review the ALJ's conclusions, and remand, therefore, is not appropriate. In her narrative discussion, the ALJ explained why the evidence supported the restrictions on Plaintiff's upper right extremity, Plaintiff's limitations in handling and fingering bilaterally, as well as Plaintiff's ability to perform light work. (R. at 19-28.)

First, the ALJ opined that Plaintiff can perform light work, except that she can lift and carry twenty pounds occasionally and ten pounds frequently. (R. at 19.) To support this conclusion, the ALJ cited the medical imaging evidence relating to Plaintiff's neck and back. (R. at 21.) For example, the ALJ considered the MRI results of Plaintiff's cervical spine from 2013 and 2017,

which revealed small protrusion, mild canal stenosis, some loss of lordosis, and mild degenerative disc changes. (R. at 21, 495.) The MRI results were otherwise normal. (R. at 21, 495.) The ALJ also considered x-ray results of Plaintiff's cervical spine and lumbar spine, which revealed no significant degenerative changes. (R. at 21, 516, 687.) The ALJ concluded that Plaintiff's "cervical spine x-ray supports the light exertional level." (R. at 25.) Additionally, the ALJ considered Plaintiff's July 2017 appointment with Dr. Brian M. Cameron, a neurosurgeon. (R. at 23, 665-66.) Dr. Cameron performed a physical examination of Plaintiff, and reviewed the MRI of Plaintiff's cervical spine. (R. at 666.) Dr. Cameron noted some mild degenerative disc changes of Plaintiff's cervical spine, but otherwise Plaintiff's examination was normal. (R. at 666.) Dr. Cameron opined that neither regular follow ups nor surgical intervention was warranted. (R. at 666.)

The ALJ then explained how the medical opinion evidence supported her conclusion that Plaintiff can perform light work. (R. at 24-26.) The ALJ agreed with the opinion of consultative examiner Dr. Glen Monteiro, and the opinions of state agency consultants Dr. Eugene Noland and Dr. Jack Hutcheson, each of whom opined that Plaintiff can perform light-level exertional work, including carrying and lifting up to twenty pounds occasionally, and less than ten pounds frequently. (R. at 24-25, 151-52, 162-64, 510-13.) The ALJ disagreed with the opinion of consultative examiner Dr. Renae Fisher, who opined that Plaintiff can perform sedentary-level exertional work, including sitting for up to six hours and lifting ten pounds occasionally. (R. at 26, 745-50.) The ALJ explained that Dr. Fisher's opinion was "overly restrictive, an overstatement of the evidence, and inconsistent with the medical evidence of record as a whole including the claimant's reported activities of daily living, which supports light exertional limitations." (R. at 26, 749.) Based upon this evidence, the ALJ found that light work was appropriate.

Second, the ALJ addressed restrictions related to Plaintiff's upper right extremity. The residual functional capacity formulated by the ALJ limited Plaintiff to occasionally reaching overhead with the upper right extremity, and frequently pushing or pulling, or operating hand controls with the upper right extremity. (R. at 19.) To support this conclusion, the ALJ considered the radiological evidence concerning Plaintiff's neck, back, and upper extremity—including MRI and x-ray results, which demonstrated some degenerative changes but no significant findings. (R. at 21.) As for the opinion evidence, the ALJ noted Dr. Jerome Smith's findings that Plaintiff experienced numbness/paresthesia and decreased strength. (R. at 21-22.) Dr. Smith's physical examinations of Plaintiff further revealed muscle spasms and right grip weakness, but no swelling. (R. at 21.) Dr. Monteiro noted that Plaintiff was able to shower and prepare simple meals, but she had some difficulty with overhead activities such as combing her hair and putting on her shirt. (R. at 510-11.) Dr. Monteiro physically examined Plaintiff and noted some decreased strength and sensation on Plaintiff's right side. (R. at 512.) As a result, Dr. Monteiro opined that Plaintiff should be limited in reaching overhead and grasping with her right extremity. (R. at 513.) Additionally, both Drs. Noland and Hutcheson opined that Plaintiff may be limited to occasional reaching overhead on her right side. (R. at 151-52, 162-64.) The ALJ accounted for the opinions of Drs. Monteiro, Noland, and Hutcheson by limiting Plaintiff's overhead reaching with her upper right extremity in Plaintiff's residual functional capacity. (R. at 19.)

Third, the ALJ found that Plaintiff could occasionally handle and finger bilaterally. (R. at 19.) To support this conclusion, the ALJ considered x-rays of Plaintiff's hands, which demonstrated no significant findings. (R. at 21, 742-43.) Specifically, the x-ray of Plaintiff's right hand revealed "no radiographic abnormality of the bones, joints or soft tissues, normal alignment, and no fracture, lytic lesion or evidence of degenerative or inflammatory arthritis." (R. at 21, 742.)

The x-ray of Plaintiff's left hand demonstrated "minimal degenerative change, normal alignment, and no fracture, lytic lesion or evidence of inflammatory arthritis." (R. at 21, 743.) An electromyography ("EMG") in November 2015 demonstrated moderately severe bilateral carpal tunnel entrapment of the medium nerve; however, there were no signs of polyneuropathy or radiculopathy. (R. at 21, 551-52.) Several doctors also noted that Plaintiff has carpal tunnel and right-hand grip weakness. (R. at 21-23, 551-52, 749.) Nonetheless, the ALJ also recognized that many of Plaintiff's physical examinations were unremarkable, and Plaintiff's grip strength was never rated less than a four out of five. (R. at 23, 512, 666, 747.) Plaintiff continued with medication such as Gabapentin to ease her symptoms. (R. at 22-23, 55.)

As for the medical opinion evidence relating to Plaintiff's ability to handle and finger bilaterally, the ALJ considered records from Drs. Smith, Monterio, Noland, Hutcheson, and Fisher. First, Dr. Smith recognized Plaintiff consistently experienced spasms on the cervical paraspinal muscles, and displayed weakness or decreased strength in her right-hand grip. (R. at 21, 488-502.) Nonetheless, the ALJ underscored that Dr. Smith's opinions were temporal in nature, were based in part on Plaintiff's subjective complaints rather than objective evidence, and that Dr. Smith opined on issues reserved for the Commissioner. (R. at 24.) Accordingly, the ALJ afforded Dr. Smith's opinions little weight.

With respect to Dr. Monteiro, the ALJ noted Dr. Monteiro's findings that Plaintiff's physical examination revealed right cervical and trapezius muscle pain, four out of five grip strength in her right hand, and reduced range of motion in her cervical spine, shoulder, and right wrist. (R. at 24, 512-14.) However, as the ALJ explained, Plaintiff was also alert; tested negative in a series of tests designed to determine if an individual has carpal tunnel syndrome; demonstrated normal cranial nerves; demonstrated no focal neurological deficits; and had four out of five

11

strength in her right hand, with otherwise five out of five strength. (R. at 24, 512-14.) During her visit with Dr. Monteiro, Plaintiff wrote "today is Saturday" legibly, and she could draw and label the face of a clock. (R. at 512.) Regarding Plaintiff's manipulative limitations, Dr. Monteiro opined that Plaintiff had limitation in her right wrist, with a limitation in her range of motion of five degrees. (R. at 513.) The ALJ found Dr. Monteiro's opinion to be vague, and accordingly afforded it some weight. (R. at 24-25, 513.) Nevertheless, the ALJ still accounted for Plaintiff's manipulative limitations by limiting Plaintiff to occasional handling and fingering. (R. at 19, 24-25, 514.)

The ALJ only afforded partial weight to the opinions of Drs. Noland and Hutcheson because neither physician provided a limitation in handling and fingering—which the ALJ found necessary in Plaintiff's residual functional capacity. (R. at 19, 25.)

As for Dr. Fisher, upon physical examination, Dr. Fisher found Plaintiff had a four out of five grip strength bilaterally; tenderness in her neck and trapezius; decreased sensation in her cervical spine and upper right extremity; cervical tenderness; positive Tinel's sign in the right hand; and some numbness and swelling in the right hand. (R. at 26, 747-49.) Dr. Fisher stated that the positive Tinel's sign in Plaintiff's right hand was indicative of a diagnosis of thoracic outlet syndrome with carpal tunnel syndrome. (R. at 749.) Nonetheless, Plaintiff was not in acute distress, had a normal range of motion, and no other swelling. (R. at 26, 747-49.) Dr. Fisher explained that Plaintiff's level of impairment "if present, is . . . mild." (R. at 749.) Accordingly, Dr. Fisher opined that Plaintiff could reach, handle, feel, grasp and finger occasionally. (R. at 26, 749.) The ALJ afforded Dr. Fisher's opinion partial weight, finding that it was appropriate to incorporate these manipulative limitations in Plaintiff's residual functional capacity. (R. at 26.)

Based upon the ALJ's identification of Plaintiff's limitations, as well as her discussion of the evidence relating to each limitation, the Court concludes that the ALJ adequately detailed how the evidence supports the ALJ's residual functional capacity determination.[3] Although the ALJ did not explicitly perform a function-by-function analysis, the ALJ's narrative discussion of the evidence built "a logical bridge" from the evidence to the ALJ's conclusions. *Monroe*, 826 F.3d at 189. Because the ALJ provided an in-depth, narrative discussion of the evidence, the Court can meaningfully review the record, and ascertain how the ALJ concluded that Plaintiff could perform the relevant functions. *See Ladda*, 749 F. App'x at 172–73. Therefore, the ALJ did not err on this ground.

### 2. The ALJ Sufficiently Considered the Relevant Record Evidence.

Plaintiff also argues that the ALJ failed to consider all of the relevant evidence in the record. (Pl.'s Mem. at 9.) Specifically, Plaintiff contends that the ALJ never explained how she evaluated certain medical evidence, such as the EMG and x-ray evidence; that the ALJ did not consider the frequency and duration of Plaintiff's activities of daily living; that the ALJ failed to "address [Plaintiff's] specific complaints"; and that the ALJ did not consider Plaintiff's non-severe impairments. (Pl.'s Mem. at 9-13.) In response, Defendant argues that the ALJ considered and accounted for Plaintiff's credibly established limitations in the ALJ's residual functional capacity

---

[3] Notably, Plaintiff does not specify any function that the ALJ should have evaluated differently or any functional limitation that ALJ should have included based on the record evidence. Rather, Plaintiff's argument broadly asserts that the ALJ erred in evaluating the evidence. (*See* Pl.'s Mem. at 9-13.)

determination. (Def.'s Mem. at 22-27.) The Court reviews the ALJ's analysis regarding this evidence and concludes the ALJ sufficiently considered the relevant record evidence.

As explained above, the ALJ performed an exhaustive review of the administrative record and thoroughly detailed how the evidence supported the ALJ's residual functional capacity determination. In formulating Plaintiff's residual functional capacity, the ALJ considered: Plaintiff's testimony; the objective medical record, including progress reports from Plaintiff's medical visits, and medical imaging evidence; and the medical opinion evidence. In addition to the specific evidence supporting Plaintiff's functional limitations, the ALJ broadly considered the overall medical record, Plaintiff's conservative course of treatment, Plaintiff's subjective statements, and Plaintiff's activities of daily living to evaluate Plaintiff's residual functional capacity. (R. at 19-28.)

Plaintiff specifically argues that the ALJ failed to consider various medical reports. More precisely, Plaintiff argues that the "ALJ never explained how she evaluated" various medical reports and failed to "discuss the medical nature of the EMG and X-ray evidence on soft tissue injury." (Pl.'s Mem. at 9, 12-13.) As Plaintiff's argument notes, however, the ALJ specifically noted each of the medical reports challenged by the Plaintiff. (Pl.'s Mem. at 9 (citing R. at 21-23).) For example, the ALJ referenced the radiological imaging findings for Plaintiff's cervical spine and left hand, which demonstrated only "minimal degenerative" findings or changes and an EMG which demonstrated Plaintiff had "moderately severe carpal tunnel entrapment in the medial nerve with no signs of polyneuropathy or radiculopathy." (R. at 27, 552.) The ALJ explicitly acknowledged Plaintiff's carpal tunnel diagnosis, as well as the x-ray and EMG study results. The ALJ's written opinion adequately demonstrates that she considered those medical reports and concluded that the provided limitations were appropriate given the medical reports and other

14

evidence. (R. at 21, 23, 26-27.) The ALJ also highlighted the conservative nature of Plaintiff's treatment, and that Plaintiff responded well and improved with continued treatment. (R. at 27.) For these reasons, the ALJ did not err in her consideration of Plaintiff's medical reports.

Similarly, the ALJ adequately considered Plaintiff's daily activities, which were reported by Plaintiff's medical providers and Plaintiff. (R. at 20-22, 24, 26-27.) For example, Plaintiff reported to Dr. Monteiro that she has occasional trouble with overhead activities such as brushing her hair, and that she could peel potatoes and prepare simple meals, though with some difficulty. (R. at 24.) The ALJ noted Plaintiff's testimony that she frequently drops things throughout the day, which make activities such as cooking and writing difficult. (R. at 21, 27, 45-47.) The ALJ also provided specific details about Plaintiff's daily activities and the extent to which she could perform the activities. (R. at 21, 27-28.) For instance, the ALJ explained that Plaintiff could: cut vegetables, but could only do so for about five or ten minutes before having to stop; do household chores for a few minutes before having to rest; button her clothing, but it takes time; and could write for ten minutes. (R. at 21, 45-47, 50-51.) Nonetheless, the ALJ also noted that Plaintiff was able to drive, bathe, take her medicine, dress herself, do light housework, cook in a crockpot, sweep, exercise occasionally, and wash dishes. (R. at 20, 22, 46-48, 126-32.) The ALJ recognized that Plaintiff "has some obvious limitations" but found that "the objective record, including the activities the claimant reports she engages in to healthcare providers, would support that claimant could perform within the limitations of the residual functional capacity issued hereinabove." (R. at 27.) The ALJ accurately described Plaintiff's activities of daily living and appropriately considered these activities in formulating Plaintiff's residual functional capability.[4] *See Arakas.*, 983 F.3d at 101

---

[4] In *Arakas v. Commissioner*, the Fourth Circuit reiterated that in assessing a claimant's daily activities, an ALJ must adequately consider how the claimant's activities support the conclusion that the claimant can "engage in full-time work on a sustained basis." 983 F.3d at 101. Here,

15

(explaining that an ALJ must accurately explain a claimant's activities of daily living and how those activities support a finding that the claimant can work on a full-time basis).

Plaintiff also argues that the ALJ did not address Plaintiff's non-severe limitations in the ALJ's residual functional capacity evaluation. (Pl.'s Mem. at 10.) Although the ALJ must consider a claimant's non-severe impairments, "there is no requirement that the [residual functional capacity] reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work." *Perry v. Colvin*, No. 2:15-CV-01145, 2016 WL 1183155, at *5 (S.D.W. Va. Mar. 28, 2016). Here, the ALJ found that Plaintiff suffered from the following non-severe impairments: hypertension, hyperlipidemia, hematuria, and anemia. (R. at 18.) The ALJ explained that these impairments "have been responsive to treatment, controlled with mediations, resolved, or do not require treatment other than over-the-counter medications as well as cause no more than minimal work-related limitations." (R. at 18.) Accordingly, the ALJ reviewed Plaintiff's non-severe impairments and found that no corresponding limitations were warranted in Plaintiff's residual functional capacity determination. Notably, Plaintiff neither identified what non-severe impairments or impairments the ALJ should have addressed, nor explained how any non-severe impairment would

---

Plaintiff contends that the ALJ did not indicate how Plaintiff's daily activities were "contrary" to her testimony of severe pain when using her upper right extremity or dominant hand. (Pl.'s Mem. at 11.) However, as explained herein, the ALJ accounted for the limitations described by Plaintiff by including restrictions in Plaintiff's residual functional capacity that limit her to occasionally reaching overhead with her upper right extremity and occasionally handling and fingering bilaterally. (R. at 19.) Thus, the ALJ did not need to cite evidence "contrary" to Plaintiff's testimony, because she accounted for the limitations identified by Plaintiff.

result in a functional limitation of Plaintiff's work-related abilities. (*See* Pl.'s Mem. at 10.) Accordingly, the ALJ sufficiently considered Plaintiff's non-severe impairments.

The ALJ sufficiently considered the relevant evidence in the record, and reversal is not warranted on this ground.

### B. The ALJ Did Not Err in Her Consideration of the Vocational Expert's Testimony.

At step five of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and residual functional capacity, the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966. The Commissioner can carry her burden in the final step with the testimony of a vocational expert. §§ 404.1566(e), 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the vocational expert that accurately represent the claimant's residual functional capacity, so that the vocational expert can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

Plaintiff broadly asserts that the ALJ erred at step five because the ALJ did not sufficiently account for the vocational expert's testimony that Plaintiff could not perform her past relevant work if she was limited to occasional fingering and handling. (Pl.'s Mem. at 13.) In response, Defendant argues that Plaintiff mischaracterizes the vocational expert's testimony, and that the vocational expert testified that jobs other than Plaintiff's past relevant work exist in the national economy that accommodate Plaintiff's residual functional capacity, and specifically, the handling and fingering limitation. (Def.'s Mem. at 30 n.4.)

Plaintiff misunderstands the vocational expert's testimony. During the hearing, the ALJ presented a hypothetical to the vocational expert that asked whether Plaintiff could perform her

past relevant work if she was limited to occasionally handling and fingering with her dominant hand. (R. at 66-67.) In response to that hypothetical, the vocational expert testified that Plaintiff's past relevant work would not be available because there would be a loss of productivity that would result in the inability to maintain those positions over time. (R. at 67.) The ALJ then asked the vocational expert whether an individual with the residual functional capacity determination that the ALJ presented—including a limitation of only occasional handling and fingering—would be able to perform *other* jobs. (R. at 64-65, 68.) The vocational expert testified under those circumstances, Plaintiff could perform the positions of public area attendant, children's attendant, and furniture rental clerk. (R. at 68-69.) Further, when questioned by Plaintiff's attorney, the vocational expert reiterated her conclusion that each position identified—public area attendant, children's attendant, and furniture rental clerk—would be available if Plaintiff was limited to occasionally fingering and handling. (R. at 70-71.)

The ALJ posed an appropriate hypothetical to the vocational expert, encompassing Plaintiff's residual functional capacity including the occasional handling and fingering limitation. The vocational expert testified about three jobs that exist in significant numbers in the national economy that Plaintiff could perform given her residual functional capacity. Accordingly, the ALJ did not err.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and that the final decision of the Commissioner be AFFIRMED. Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/S/

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: February 16, 2021